UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEZMEN FAQUA,

                    Petitioner,                    Case No. 2:19-cv-10935
                                                                           Hon. Mark A. Goldsmith

v.

GREGORY SKIPPER,

                    Respondent.
_____/

## OPINION AND ORDER
## (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) GRANTING PETITIONER'S MOTION TO AMEND PETITION, AND (3) DENYING A CERTIFICATE OF APPEALABILITY

Dezmen Faqua, ("Petitioner"), a Michigan prisoner, filed this action under 28 U.S.C. § 2254. Petitioner was convicted after a bench trial in the Wayne Circuit Court of second-degree murder, Mich. Comp. Laws § 750.317, assault with intent to do great bodily harm, Mich. Comp. Laws § 750.84, carjacking, Mich. Comp. Laws § 750.529a, armed robbery, Mich. Comp. Laws § 750.529, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during commission of a felony. Mich. Comp. Laws § 750.227b. Petitioner was sentenced to a number of concurrent prison terms, the longest of which is a 25-to-50-year term for his murder conviction. Petitioner must also serve a consecutive 2-year term for the felony-firearm conviction.

The petition raises one claim: Petitioner was denied the effective assistance of trial counsel when his attorney failed to consult expert witnesses about challenging the reliability of identification testimony presented at trial. Petitioner also filed a "petition to amend petition for writ of habeas corpus," seeking to add an issue challenging the jurisdiction of the state court to try him. The motion to amend the petition is granted, and the challenge to the jurisdiction is discussed

below. However, the petition is denied because the two claims are without merit. The Court also denies Petitioner a certificate of appealability.

## I. BACKGROUND

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from a fatal shooting at a Wendy's restaurant in Detroit. Reed and his two sons, nine-year-old CJ and eight-year-old CS, were in the drive-thru lane waiting for food when they were approached on foot by two gunmen, who demanded Reed's possessions. Reed was ultimately shot and killed, and CJ was shot in the thumb as he tried to protect his father. After the shooting, the two men drove Reed's car, with the children inside, to a dark neighborhood, where they stole Reed's money, Rolex watch, and glasses. Both children subsequently identified defendant as the man who stood on the passenger's side of their car during the shooting. Defendant was also identified by a jewelry store employee as an individual who attempted to sell him a Rolex watch the day after the crime. At trial the employee identified a photograph of a watch as similar to the one defendant attempted to sell him. Reed's fiancé [sic] testified that the photograph depicted Reed's watch.

People v. Faqua, No. 331478, 2017 WL 3197693, at *1 (Mich. Ct. App. Jul. 27, 2017).

Following his conviction and sentencing, Petitioner filed a brief on appeal in the Michigan Court of Appeals that raised one claim:

> No physical evidence linked Mr. Faqua to the crimes of which he was convicted. Circumstances surrounding the child eyewitnesses' testimony indicate a likelihood of tainted and unreliable identification. Trial counsel was ineffective for failing to obtain an expert witness who would have aided the trier of fact in evaluating the reliability of that testimony.

Brief for Appellant, People v. Faqua, No. 331478, at PageID.685 (Dkt. 9-14). The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. Faqua, 2017 WL 3197693 at *1. Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, asserting the same claim. The Michigan Supreme Court denied the application because it was "not

persuaded that the questions presented should be reviewed." People v. Faqua, 908 N.W.2d 547 (Mich. 2018).

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

"[T]he 'unreasonable application' prong of [the statute] permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking

3

in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 102-103 (internal quotation marks omitted).

### III. ANALYSIS

Petitioner seeks habeas relief based on ineffective assistance of counsel and a challenge to the state court's jurisdiction. Neither argument is persuasive.

**A. Ineffective Assistance of Counsel**

Petitioner claims that his counsel was ineffective for failing to consult with and retain expert witnesses to challenge the reliability of the two child witnesses' identification testimony. Petitioner supported this claim in the Michigan Court of Appeals with the affidavits of two experts who state that they would have testified to problems with the identification testimony. The affidavits were filed in support of Petitioner's motion to remand the case to the trial court, so that an evidentiary hearing could be held on the claim. The Michigan Court of Appeals denied the motion to remand. People v. Faqua, No. 331478, at PageID.494 (Mich. Ct. App. Dec. 21, 2016) (Dkt. 9-14).

The first affidavit was executed by Colleen M. Seifert, a cognitive psychologist and professor at the University of Michigan. Seifert stated that she reviewed the preliminary exam transcript, the trial transcripts, and the Kids Talk interviews, and she concluded that the children's identifications included factors that had been shown in scientific studies to impair eyewitness accuracy. Seifert explained that the accuracy of the identifications was adversely impacted by the viewing conditions, the children's age, the rapid decrease in memory over time, post-event circumstances that might have altered the children's memories, and flaws in the photographic identification procedure.

4

The second affidavit was executed by David W. Thompson, a forensic psychologist with experience in the review of child forensic interviews. Thompson stated that he was willing to testify in general about factors that might increase or decrease the reliability of eyewitness identification. Thompson stated that there were several factors present in Petitioner's case that decreased the reliability of the identifications, including: inappropriate Kids Talk forensic interview techniques, inconsistent statements by the children, admissions by the children that some of their prior statements were not truthful, and exposure to post-event information and influences.

In its decision affirming Petitioner's convictions, the Michigan Court of Appeals considered the affidavits of the experts as part of the record, but it nevertheless denied relief after reciting the established Supreme Court standard on the grounds that defense counsel otherwise effectively challenged the identification testimony and because Petitioner failed to demonstrate prejudice, as follows:

> In this case, defendant cannot overcome the presumption that defense counsel engaged in reasonable trial strategy by attempting to attack and undermine the credibility and reliability of the witness testimony through cross-examination and argument at trial. Defendant has submitted two affidavits from psychologists on appeal in support of his claim, one from a clinical and forensic psychologist, David W. Thompson, PhD, and the other from a cognitive psychologist, Colleen M. Seifert, PhD. We have reviewed the affidavits as well as the lower court record and conclude that defendant has failed to establish that the proposed testimony of Dr. Thompson and Dr. Seifert would have made a difference in the outcome of the trial.
>
> Defense counsel's strategy at trial was to challenge the reliability of the children's identifications of defendant as the gunman on the passenger side of Reed's car during the shooting. The record reveals that defense counsel extensively and effectively cross-examined the child eyewitnesses, and argued that their identifications of defendant were not credible. Although Dr. Seifert avers that she would have testified about the effects of short exposure time and vantage points on identification, the children's opportunity to view defendant before, during, and after the shooting, when defendant rode in Reed's car with the children, and when defendant stole Reed's possessions, was clear from the record. Moreover, defense counsel repeatedly cross-examined the children on their vantage points.

5

Dr. Seifert also avers that she would have testified about the children's likelihood of rejecting lineups that did not contain the suspect, but the record demonstrated that neither child waivered about the identification of defendant. Rather, both children separately and immediately recognized him among the six photographs presented by the officer in charge. Dr. Seifert offered statistics about the dissipation of memory over time, but defense counsel also repeatedly elicited evidence and argued that details of the children's accounts changed over time. In its factual findings, the trial court acknowledged the differences and its understanding that memories fade.

Dr. Seifert and Dr. Thompson both address the effect of post-event information on memory in their affidavits. But, again, defense counsel repeatedly questioned the children about these influences and argued that they were coached by family and their testimony was tainted. The trial court rejected any claim that the children were coached, explaining that discussions with family in this circumstance, when children saw their father murdered, were reasonable. Dr. Seifert explains that a witness is more likely to recall observations of actions than other specific details. However, defense counsel elicited testimony that the boys forgot specific details, and he specifically focused on the biggest discrepancy in their memories of defendant's actions—that they initially stated in police interviews that defendant did not shoot and later testified at trial that he did.

Although Dr. Seifert recommends police practices to avoid suggestion during lineups, defendant does not argue that the police procedure used for the children to identify defendant's picture was somehow suggestive. Moreover, defense counsel questioned witnesses about the risk that the children's identifications at the police station were influenced by discussions about the shooting in the car on the way to the station and whether the boys were shown photographs of the perpetrators on Instagram at home before the lineup. Finally, Dr. Thompson avers that the exposure to repeated and suggestive interview techniques decreased the reliability of the identifications. Defense counsel similarly argued that the identifications were tainted and the trial court acknowledged that the police interviews of the children were poorly administered, but the trial court nevertheless ruled that even though memories fade, and witnesses see and remember events differently, the witnesses are not necessarily untruthful.

This Court does not substitute its judgment for that of defense counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. People v. Payne, 285 Mich. App. 181, 190 (2009). While defense counsel could have chosen to present the proffered expert testimony explaining the unreliability of eyewitness identification to buttress the misidentification defense, defense counsel's choice to pursue the defense through cross-examination and argument did not fall below an objective standard of reasonableness.

> Moreover, as the trial court observed, other evidence corroborated CJ's and CS's testimony and identification of defendant. Both children testified consistently that the perpetrators stole Reed's Rolex watch. An employee at a jeweler testified that defendant attempted to sell him a Rolex watch the very next day. At trial, the employee identified Reed's watch as the same or similar to the watch that defendant tried to sell him. In addition, CJ and CS testified at trial that both perpetrators carried and fired guns at Reed's car in the Wendy's drive-thru. Defense counsel attempted to impeach the boys' testimony by citing earlier statements that defendant did not fire a gun. But the evidence technician recovered shell casings from two different caliber firearms and a bullet hole was observed in the passenger's side door, which permitted the trier of fact to infer that the boys' trial testimony was accurate. Defendant cannot establish that he was denied a substantial defense or that, but for defense counsel's failure to offer expert testimony regarding the reliability of eyewitness identification, it is reasonably probable that the outcome of trial would have been different.

Faqua, 2017 WL 3197693 at *2-3.

Under clearly established Supreme Court law, "[t]o establish ineffective assistance of counsel, a [petitioner] must show both deficient performance by counsel and prejudice." Premo v. Moore, 562 U.S. 115, 121 (2011) (internal citation omitted). "To establish deficient performance" a petitioner "must show that counsel's representation fell below an objective standard of reasonableness. A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." Harrington, 562 U.S. at 104 (internal quotations and citations omitted). A petitioner must show that counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. (internal quotations and citation omitted). "With respect to prejudice, a challenger must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

When reviewing a state court's denial of an ineffective assistance of counsel claim under this standard, federal habeas courts undertake a "doubly deferential" standard of review. Woods

7

v. Donald, 575 U.S. 312, 316 (2015). The underlying standard is itself "highly deferential" to counsel's performance. Strickland v. Washington, 466 U.S. 668, 689 (1984). On habeas review under 28 U.S.C. § 2554(d), "review must be 'doubly deferential' in order to afford 'both the state court and the defense attorney the benefit of the doubt.'" Woods, 575 U.S. at 316-317 (quoting Burt v. Titlow, 571 U.S. 12, 15 (2013). "The question [on habeas review] is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105.

The state court found that counsel's strategy of attacking the children's identification testimony through cross-examination and argument rather than through expert testimony satisfied Strickland's objective standard of reasonableness. This decision was reasonable. The standard does not ask whether counsel employed the best strategy or failed to pursue an avenue of defense that was superior; the standard asks whether the defense strategy actually employed fell within the wide range of "reasonable professional assistance." Harrington, 562 U.S. at 104. Here, defense counsel attacked the eyewitness identification in the manner most commonly seen in state criminal trials. He vigorously cross-examined the witnesses, and by doing so, suggested to the trier of fact (here the trial judge) that the circumstances of the identification created a reasonable doubt as to the veracity of the witnesses. Calling expert witnesses might have added to this line of defense, but simply put, "no precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." Perkins v. McKee, 411 F. App'x 822, 833 (6th Cir. 2011); see also Dorch v. Smith, 105 F. App'x 650, 653 (6th Cir. 2004) (upholding as reasonable the Michigan Court of Appeals' conclusion that defense counsel's failure to call an expert witness on eyewitness identification counsel did not satisfy Strickland, because counsel "presented several

8

witnesses who testified as to [the habeas petitioner's] whereabouts on the weekend of the incident" and cross-examined the eyewitness regarding inconsistencies in his identification of the petitioner).

In <u>Harrington</u>, the Supreme Court upheld a state court determination that defense counsel was not ineffective for failing to consult a blood evidence expert witness to challenge the prosecutor's theory regarding a pool of blood found at the crime scene because counsel reasonably chose to pursue a different line of defense. The Court stated the following:

> Criminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence, whether pretrial, at trial, or both. There are, however, 'countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.' <u>Strickland</u>., at 689. Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach. <u>Ibid.</u> It can be assumed that in some cases counsel would be deemed ineffective for failing to consult or rely on experts, but even that formulation is sufficiently general that state courts would have wide latitude in applying it.

<u>Harrington</u>, 562 U.S. at 106.

So too here, even if it would have been a superior strategy to challenge the victims' identification by combining cross-examination with expert testimony, it does not follow that relying on cross-examination and argument alone fell outside the wide latitude granted counsel by the <u>Strickland</u> standard. The fact that counsel cross-examined the victims on many of the subjects raised in the experts' affidavits allowed the state appellate court to find, reasonably, that Petitioner failed to meet its burden under <u>Strickland</u> to show deficient performance. Petitioner's claim is not unique in that regard. See, e.g., <u>Martin v. Horton</u>, No. 18-2004, 2018 U.S. App. LEXIS 37002, at *9 (6th Cir. Dec. 14, 2018) ("Martin does not question trial counsel's effectiveness in challenging the identification aside from his failure to present an eyewitness identification expert. Reasonable jurists could not debate the district court's conclusions that trial counsel's failure to produce an

9

expert witness on eyewitness identification was not deficient because trial counsel thoroughly challenged the identification evidence through other means . . . .); Greene v. Lafler, 447 F. Supp. 2d 780, 794-795 (E.D. Mich. 2006) (holding that a habeas petitioner was not denied effective assistance of counsel due to trial counsel's failure to seek the assistance of expert witness on identification, where counsel otherwise elicited testimony to discredit the victim's identification testimony).

The Michigan Court of Appeals also found that Petitioner failed to demonstrate Strickland prejudice because the two children who identified Petitioner were thoroughly subjected to cross-examination, and perhaps more importantly, because Petitioner attempted to sell a Rolex watch similar to the one taken from the victim soon after the crime. The watch evidence in particular was a rather damning piece of circumstantial evidence indicating that the children got it right when they identified Petitioner as one of the two men who perpetrated the crime. This corroborating evidence allowed the Michigan Court of Appeals to conclude, reasonably, that expert witnesses would not, with reasonable probability, have led to a more favorable verdict for Petitioner. See, e.g., Mullins v. Parish, 2018 WL 2120600, at *2 (6th Cir. May 8, 2018) (finding that state trial court reasonably rejected claim that counsel was ineffective for failing to hire identification expert where Petitioner was identified by several eyewitnesses and there was other evidence establishing his identity as perpetrator of crime); Jackson v. Perry, No. 11-2078, 2012 U.S. App. LEXIS 27284, at *9 (6th Cir. June 15, 2012) (holding that a habeas petitioner was not prejudiced by his counsel's failure to obtain an expert to testify about tainted identification given counsel's thorough cross-examination of identifying witness).

Accordingly, Petitioner has failed to demonstrate that the state court adjudication of his ineffective assistance of counsel claim resulted from an unreasonable application of the Strickland standard.

**B. Jurisdiction of Trial Court**

Petitioner asserts in his motion to amend his petition that the trial court lacked jurisdiction to try him because the state court docket sheet indicates that the arrest warrant was signed and issued two days after the date of his arraignment. He argues that state law prohibited his arraignment prior to his arrest, and that without a valid arraignment, the state court lacked jurisdiction to try him.

Under Michigan law, "a failure to arraign is a defect that is 'merely technical, affecting no substantial right whatever.'" People v. Lee, No. 334920, 2018 WL 442854, at *13 (Mich. Ct. App. Jan. 16, 2018) (citing People v. Weeks, 130 N.W. 697, 698 (Mich. 1911)). In any event, challenges to the propriety of initial proceedings in the state courts are not cognizable in federal habeas corpus, because they do not undermine the validity of a conviction. See Gerstein v. Pugh, 420 U.S. 103, 119 (1975); Roe v. Baker, 316 F.3d 557, 570 (6th Cir. 2002); Mira v. Marshall, 806 F.2d 636, 639 (6th Cir. 1986). The claim added by Petitioner in his motion to amend is also without merit.

As neither of his claims merit relief, the petition is denied.

### IV. CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this decision, the Court must determine whether to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have

been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The Court finds that reasonable jurists would not debate the resolution of Petitioner's claims. The Court will therefore deny a certificate of appealability.

## V. CONCLUSION

Accordingly, the Court (i) denies with prejudice the petition for a writ of habeas corpus, (ii) grants petitioner's motion to amend his petition, and (iii) denies a certificate of appealability.

SO ORDERED.

Dated: August 6, 2020  
    Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 6, 2020.

s/Karri Sandusky  
Case Manager